UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :       <u>INDICTMENT</u>

     -v.-                          :       S1 11 Cr. 62 (PAC)

RICARDO FERNANDEZ,                 :
JEFFERY HALBIRT,
STINSON BLAND,                     :
DONNA LEVY,
JEFFREY HURWITT,                   :
MICHAEL STEINBERG,
WILLIAM MACKEY,                    :
THOMAS PREZIOSO, and
BRADLEY SUSSER,                    :

            Defendants.    :

- - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

<u>COUNT ONE</u>

(Conspiracy to Commit Securities and Wire Fraud)

The Grand Jury charges:

<u>The "Pump And Dump" Stock Fraud Conspiracy</u>

1.    From at least in or about 2005 up to and
including in or about September 2010, RICARDO FERNANDEZ,
JEFFREY HURWITT, JEFFERY HALBIRT, STINSON BLAND, DONNA LEVY,
MICHAEL STEINBERG, WILLIAM MACKEY, THOMAS PREZIOSO, and
BRADLEY SUSSER, the defendants, and multiple other individuals
and entities, were involved in a "pump-and-dump" stock fraud
scheme, <u>i.e.</u>, a scheme to fraudulently inflate the prices of
publicly-traded stocks of companies with low share prices
(also known as "penny stocks") through a variety of fraudulent
and misleading statements and practices that were intended to

deceive investors into believing that prices at which they purchased and sold the penny stocks were determined by the natural interplay of supply and demand, not rigged by manipulators.

Means and Methods of the Conspiracy

2.    During the course of the conspiracy, RICARDO FERNANDEZ, JEFFREY HURWITT, JEFFERY HALBIRT, STINSON BLAND, DONNA LEVY, MICHAEL STEINBERG, WILLIAM MACKEY, THOMAS PREZIOSO, and BRADLEY SUSSER, the defendants, served as, among other things, market manipulators "for hire."  That is, each of the defendants worked, in conjunction with others known and unknown, to manipulate the share prices of penny stocks in exchange for payment in stock of the targeted company; in cash; or in other forms of consideration, including inside information about the timing of manipulation schemes, to artificially inflate the share price of targeted securities, including their projected peak and end times, so that recipients of this information could trade profitably on the basis of the information.  Penny stocks targeted through the schemes traded on exchanges, and in brokerage accounts used by members of the conspiracy, located in the Southern District of New York, and misleading postings on the Internet and social networking sites were viewable in the Southern District of New York.

3.    The conspiracy required participants to serve in one or more of several roles, described as follows:

a.    One role in the conspiracy was that of a promoter (hereinafter, a "Promoter"), who was primarily responsible for coordinating a given scheme to manipulate the price of a targeted penny stock in exchange for compensation from company management or another owner of the targeted stock who stood to benefit from the manipulation.  Once a targeted stock was identified and funding acquired, a Promoter would coordinate efforts to pump up the price of the stock in order to enable insiders in the scheme to sell at maximum profit before the efforts to artificially inflate the price of the stock collapsed.

b.    Another role in the conspiracy was that of a "touter" (hereinafter, a "Touter") who disseminated false or misleading positive information to the marketplace through postings on web sites, message boards, "Twitter" accounts, and other online and social media, among other means, in a coordinated manner to induce recipients of the communications to buy the shares of targeted stocks.  Touts were coordinated at the direction of a Promoter (or at the Touter's own direction, in those cases where a Promoter also served as a Touter),

c.    Another role in the conspiracy was that of an account holder (hereinafter, an "Account Holder"), who opened up brokerage accounts and used, or allowed these accounts to be used by their co-conspirators, to buy and sell targeted stocks in large volume, as well as to receive shares or cash as compensation to be ultimately routed through their accounts to other participants in the scheme.  The use of multiple accounts to generate volume in targeted stocks, and to receive and transfer proceeds of the scheme, enabled the participants in the scheme to minimize the risk of regulatory or law enforcement suspicion falling upon them as a result of their ownership of large amounts of shares of targeted stock, their high trading volume in the targeted stock, and other indicia of participation in the scheme.

4.    In general, the conspiracy worked as follows:

a.    One or more Promoters would receive compensation from a client to run a pump and dump scheme concerning a penny stock.  Once the stock was identified, a Promoter would recruit several Touters from a network maintained by the Promoter to create mass communications that would tout the targeted stock in a manner that was appeared coincidental, but that was actually timed to achieve the goals of the pump and dump scheme by creating the illusion that independent analysts of penny stock were coming to the same

-4-

positive conclusion about the advisability of purchasing targeted stock.

b.   A Promoter would also generate trading volume in a targeted stock by recruiting several Account Holders from a network maintained by the Promoter, by Touters, or by others, to, among other things, generate volume in the targeted stock that would pump up the share price of the stock by creating the illusion of broad public interest in the stock, and by creating the false impression of competition in the marketplace for shares of the targeted stock. Participants in the scheme could employ trading methods that would inject misleading information into the marketplace about the demand for, and price of, the targeted stock.

c.   Often, particularly when company insiders were benefitting from the scheme, the targeted company itself would issue a press release or other public announcement of a purported positive development during the period that the targeted stock was being pumped.  These efforts would be coordinated with the efforts of Touters such that the investing public would be left with the false impression that there was genuine interest from both the investing public and from independent analysts of penny stocks, and that there was a legitimate reason for the targeted company's stock to rise.

d.  This combination of activities, in whole or in part, was intended to trick unsuspecting investors into trading on the basis of the fraudulent and misleading information that participants in the scheme had injected into the marketplace, thereby increasing the upward momentum of the stock.  Particularly where all of the means and methods described above were employed effectively and in coordination, this inflow of money from the unsuspecting investing public would sufficiently pump up the price of the shares of the targeted stock to permit those funding the scheme to achieve their profit objectives.  At that point, the Promoter(s) responsible for the scheme with respect to that stock would notify insiders that it was time to sell, or "dump," the targeted stock.  Insiders—Promoters, Touters, and Account Holders among them—would then, among other things, sell their shares and stop trading in the stock, placing downward pressure on share prices and causing trading volume to plummet, and Touters would often cease continuing to promote the targeted stock.  This combination of events would tend to cause the price of a targeted stock whose price had been successfully manipulated upwards by the scheme to decline, exposing unsuspecting investors to significant losses.

e.  Each of the defendants charged herein knew that the objective of the conspiracy was to manipulate the

price of targeted stocks through a combination of deceptive
statements and practices.

## Statutory Allegation

5.   From at least in or about 2005, up to and
including in or about September 2010, in the Southern District
of New York and elsewhere, RICARDO FERNANDEZ, JEFFREY HURWITT,
JEFFERY HALBIRT, STINSON BLAND, DONNA LEVY, MICHAEL STEINBERG,
WILLIAM MACKEY, THOMAS PREZIOSO, and BRADLEY SUSSER, the
defendants, and others known and unknown, unlawfully,
willfully, and knowingly did combine, conspire, confederate,
and agree together and with each other to commit an offense
against the United States, to wit: (a) securities fraud, in
violation of Title 15, United States Code, Sections 78j(b) &
78ff, and Title 17, Code of Federal Regulations, Sections
240.10b-5 and 240.10b5-2; and (b) wire fraud, in violation of
Title 18, United States Code, Section 1343.

6.   It was a part and object of the conspiracy that
RICARDO FERNANDEZ, JEFFREY HURWITT, JEFFERY HALBIRT, STINSON
BLAND, DONNA LEVY, MICHAEL STEINBERG, WILLIAM MACKEY, THOMAS
PREZIOSO, and BRADLEY SUSSER, the defendants, and others known
and unknown, unlawfully, willfully and knowingly, directly and
indirectly, by the use of means and instrumentalities of
interstate commerce, and of the mails, and of facilities of
national securities exchanges, would and did use and employ,

-7-

in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon purchasers and sellers, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

7. It was a further part and an object of the conspiracy that RICARDO FERNANDEZ, JEFFREY HURWITT, JEFFERY HALBIRT, STINSON BLAND, DONNA LEVY, MICHAEL STEINBERG, WILLIAM MACKEY, THOMAS PREZIOSO, and BRADLEY SUSSER, the defendants, and others known and unknown, unlawfully, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign

commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

Overt Acts

8. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On or about March 12, 2009, a brokerage account controlled by BRADLEY SUSSER, the defendant, received 40,000,000 shares of stock of Paradigm Medical Industries, Inc. ("PDMI"), which was the target of a pump and dump scheme.

b. On or about May 22, 2009, a brokerage account controlled by WILLIAM MACKEY, the defendant, received 10,000,000 shares of PDMI.

c. On or about April 5, 2010, MICHAEL STEINBERG, the defendant, had a telephone conversation with a co-conspirator not named herein ("CC-1") about the stock of Emerging World Pharma, Inc. ("EWPI"), which was the target of a pump and dump scheme.

d. On or about April 5, 2010, DONNA LEVY, the defendant, had a telephone conversation with CC-1 about EWPI.

e. On or about April 5, 2010, RICARDO FERNANDEZ, the defendant, posted a stock recommendation on the

Internet concerning EWPI that was viewed by a law enforcement official in the Southern District of New York.

f.   On or about April 6, 2010, JEFFREY HURWITT, the defendant, posted a stock recommendation on the Internet concerning EWPI that was viewed by a law enforcement official in the Southern District of New York.

g.   On or about April 29, 2010, STINSON BLAND, the defendant, had a conversation with CC-1 about the stock of GreenGro Technologies ("GRNH"), which was the target of a pump and dump scheme.

h.   On or about May 10, 2010, JEFFREY HALBIRT and BRADLEY SUSSER, the defendants, and CC-1 had a conversation about the stock of Talent Alliance, Inc. ("TLAN"), which was the target of a pump and dump scheme.

i.   On or about May 12, 2010, THOMAS PREZIOSO, the defendant, and CC-1 had a conversation about the stock of TLAN.

(Title 18, United States Code, Section 371.)

COUNTS TWO THROUGH SIX

(Securities Fraud)

The Grand Jury further charges:

9.   The allegations contained in paragraphs 1-4 of this Indictment are repeated and realleged as if fully set forth herein.

-10-

10.  On or about the dates set forth below, in the Southern District of New York and elsewhere, RICARDO FERNANDEZ, JEFFREY HURWITT, JEFFERY HALBIRT, STINSON BLAND, DONNA LEVY, MICHAEL STEINBERG, WILLIAM MACKEY, THOMAS PREZIOSO, and BRADLEY SUSSER, the defendants, unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ, and cause to be used and employed, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, the defendants set forth below participated, with others known and unknown, in pump and dump schemes involving the following securities during on or about the time periods set forth below:

| COUNT | DEFENDANTS | SECURITY | TIME PERIOD |
|-------|-----------|----------|-------------|
| TWO | RICARDO FERNANDEZ, BRADLEY SUSSER, THOMAS PREZIOSO, and WILLIAM MACKEY | PDMI | January to June 2009 |
| THREE | RICARDO FERNANDEZ, THOMAS PREZIOSO, WILLIAM MACKEY, and BRADLEY SUSSER | Metatron, Inc. ("MRNJ") | July 2009 to March 2010 |
| FOUR | RICARDO FERNANDEZ, JEFFREY HURWITT, BRADLEY SUSSER, THOMAS PREZIOSO, DONNA LEVY, and MICHAEL STEINBERG | EWPI | March to June 2010 |
| FIVE | BRADLEY SUSSER, JEFFREY HALBIRT, THOMAS PREZIOSO, STINSON BLAND, and JEFFREY HURWITT | TLAN | March to June 2010 |
| SIX | JEFFREY HALBIRT, STINSON BLAND, BRADLEY SUSSER and THOMAS PREZIOSO | GRNH | March to June 2010 |

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section 2).

## COUNT SEVEN

The Grand Jury further charges:

11. The allegations contained in paragraphs 1-10 of this Indictment are repeated and realleged as if fully set forth herein.

12. From at least in or about 2005 up to and including in or about September 2010, in the Southern District of New York and elsewhere, RICARDO FERNANDEZ, JEFFREY HURWITT,

JEFFERY HALBIRT, STINSON BLAND, MICHAEL STEINBERG, WILLIAM MACKEY, THOMAS PREZIOSO, and BRADLEY SUSSER, the defendants, and others known and unknown, unlawfully, willfully and knowingly did combine, conspire, confederate, and agree together and with each other, to violate Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1957(a).

13. It was a part and an object of the conspiracy that RICARDO FERNANDEZ, JEFFREY HURWITT, JEFFERY HALBIRT, STINSON BLAND, MICHAEL STEINBERG, WILLIAM MACKEY, THOMAS PREZIOSO, and BRADLEY SUSSER, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of the wire fraud and securities fraud conspiracy charged in Count One of this Indictment, and the proceeds of the securities frauds charged in Counts Two through Six of this Indictment, with the intent to promote the carrying on of that specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

14.   It was a further part and an object of the conspiracy that RICARDO FERNANDEZ, JEFFREY HURWITT, JEFFERY HALBIRT, STINSON BLAND, MICHAEL STEINBERG, WILLIAM MACKEY, THOMAS PREZIOSO, and BRADLEY SUSSER, the defendants, and others known and unknown, within the United States and involving United States persons, in an offense involving and affecting interstate and foreign commerce, unlawfully, willfully, and knowingly would and did engage and attempt to engage in monetary transactions in criminally-derived property of a value greater than $10,000 that is derived from specified unlawful activity, to wit, the proceeds of the wire fraud and securities fraud conspiracy charged in Count One of this Indictment, and the proceeds of the securities frauds charged in Counts Two through Six of this Indictment, in violation of Title 18, United States Code, Section 1957(a).

<u>OVERT ACT</u>

15.   In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a.   On or about April 20, 2009, BRADLEY SUSSER, the defendant, wire transferred $34,500 using a bank located in the Southern District of New York.

(Title 18, United States Code, Section 1956(h).)

-14-

## FORFEITURE ALLEGATION: COUNTS ONE THROUGH SIX

16. As a result of committing one or more of the offenses alleged in Counts One through Six of the Indictment (*i.e.*, conspiracy to commit securities fraud and wire fraud, in violation of Title 18, United States Code, Section 371; and securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section 2), RICARDO FERNANDEZ, JEFFREY HURWITT, JEFFERY HALBIRT, STINSON BLAND, DONNA LEVY, MICHAEL STEINBERG, WILLIAM MACKEY, THOMAS PREZIOSO, and BRADLEY SUSSER, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the said offenses, including but not limited to the following:

a. At least $10 million in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Six of this Indictment;

b. All funds on deposit in account number 9944174957, held in the name of Bradley Susser d/b/a Bradley

Stevens and Associates, at Citibank, and all property
traceable thereto;

c.   All funds on deposit in account number
2735470920, held in the name of Quin Consulting, at JPMorgan
Chase Bank, and all property traceable thereto;

d.   All funds on deposit in account number
9137660265, held in the name of Quin Consulting, at JPMorgan
Chase Bank, and all property traceable thereto;

e.   All funds on deposit in account number
91376765601, held in the name of Michael Oiring, at JPMorgan
Chase Bank, and all property traceable thereto;

f.   All funds on deposit in account number
859126005, held in the name of Temeku Financial, at JPMorgan
Chase Bank, and all property traceable thereto;

g.   All funds on deposit in account number
863270583, held in the name of Temeku Financial, at JPMorgan
Chase Bank, and all property traceable thereto;

h.   All funds on deposit in account number
2954887218, held in the name of Jeffrey Halbirt, at JPMorgan
Chase Bank, and all property traceable thereto;

i.   All funds on deposit in account number
229002951378, held in the name of Jeffrey Hurwitt d/b/a
Tefflon Jefflon, at Bank of America, and all property
traceable thereto;

j.   All funds on deposit in account number 229024835472, held in the name of Stock Awareness Group, at Bank of America, and all property traceable thereto; and

k.   All funds on deposit in account number 229027580685, held in the name of Stock Awareness Group, at Bank of America, and all property traceable thereto.

### Substitute Asset Provision

17.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981, and
Title 28, United States Code, Section 2461.)

## FORFEITURE ALLEGATION: COUNT SEVEN

18. As the result of committing the money laundering offense alleged in Count Seven of this Indictment, RICARDO FERNANDEZ, JEFFREY HURWITT, JEFFERY HALBIRT, STINSON BLAND, MICHAEL STEINBERG, THOMAS PREZIOSO, BRADLEY SUSSER, and WILLIAM MACKEY, the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982, all property, real and personal, involved in the money laundering offense and all property traceable to such property, including but not limited to the following:

a. At least $10 million in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Six of this Indictment;

b. All funds on deposit in account number 9944174957, held in the name of Bradley Susser d/b/a Bradley Stevens and Associates, at Citibank, and all property traceable thereto;

c. All funds on deposit in account number 2735470920, held in the name of Quin Consulting, at JPMorgan Chase Bank, and all property traceable thereto;

d.   All funds on deposit in account number 9137660265, held in the name of Quin Consulting, at JPMorgan Chase Bank, and all property traceable thereto;

e.   All funds on deposit in account number 91376765601, held in the name of Michael Oiring, at JPMorgan Chase Bank, and all property traceable thereto;

f.   All funds on deposit in account number 859126005, held in the name of Temeku Financial, at JPMorgan Chase Bank, and all property traceable thereto;

g.   All funds on deposit in account number 863270583, held in the name of Temeku Financial, at JPMorgan Chase Bank, and all property traceable thereto;

h.   All funds on deposit in account number 2954887218, held in the name of Jeffrey Halbirt, at JPMorgan Chase Bank, and all property traceable thereto;

i.   All funds on deposit in account number 229002951378, held in the name of Jeffrey Hurwitt d/b/a Tefflon Jefflon, at Bank of America, and all property traceable thereto;

j.   All funds on deposit in account number 229024835472, held in the name of Stock Awareness Group, at Bank of America, and all property traceable thereto; and

k.    All funds on deposit in account number 229027580685, held in the name of Stock Awareness Group, at Bank of America, and all property traceable thereto.

### Substitute Asset Provision

19.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendants, up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 982 and 1956.)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

RICARDO FERNANDEZ,
JEFFREY HURWITT,
JEFFERY HALBIRT,
STINSON BLAND,
DONNA LEVY,
MICHAEL STEINBERG,
WILLIAM MACKEY,
THOMAS PREZIOSO,
and BRADLEY SUSSER,

Defendants.

## INDICTMENT

S1 11 Cr. 62 (PAC)

(18 U.S.C. §§ 371, 1956;
15 U.S.C. §§ 78j(b) & 78ff &
18 U.S.C. § 2.)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.